## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MIGUEL DAUPHIN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-4850** |
| **AMERICAN FIRE & CASUALTY COMPANY, et al.** | **SECTION "G"(5)** |

### ORDER

Before the Court is Plaintiff Miguel Dauphin's ("Dauphin") "Motion for Judgment Notwithstanding the Verdict or Motion for a New Trial."[1] Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court will deny the motion.

### I. Background

On August 1, 2012, Dauphin was driving on the Westbank Expressway in Jefferson Parish, Louisiana, when his 2008 Mercedes Benz E350 was rear-ended by a 2006 Ford F-250 driven by David W. Gaither ("Gaither").[2] At the time of the collision, Gaither was employed by Defendant Hollis Electric Company, Inc. ("Hollis Electric"), who also owned the Ford F-250.[3] Defendant American Fire & Casualty Company ("American Fire") served as Hollis Electric's vehicle liability insurer.[4] On June 19, 2013, Dauphin filed the complaint in this matter against Gaither, Hollis

---

[1] Rec. Doc. 58.

[2] Rec. Doc. 1 at ¶ 9.

[3] *Id.*

[4] *Id.* at ¶ 10.

Electric, and American Fire (collectively, "Defendants").[5] He asserted a claim for negligence and sought damages including past and future physical pain and suffering, past and future mental anguish, medical expenses, disability, wage loss and loss of earning capacity, and property damage.[6]

On June 11, 2014, the Court granted Dauphin's unopposed motion for summary judgment, holding that Gaither is 100 percent liable and solely at fault for any damages arising out of the collision, and that Dauphin is free from any fault or liability in the accident.[7] On June 30, 2014, a jury trial commenced to determine the sole issues of (1) whether Dauphin sustained any injuries in the collision, and (2) the nature, severity, extent, and duration of any injuries and damages sustained in the accident.[8] On July 1, 2014, after a two day trial, the seven-member jury returned a unanimous verdict that Dauphin did not sustain injuries caused by the August 1, 2012 collision.[9] Accordingly, the jury did not reach the issue of compensatory damages.[10]

Dauphin filed the pending motion for judgment notwithstanding the verdict or, in the alternative, a new trial on July 29, 2014.[11] Defendants filed a memorandum in opposition on August 8, 2014,[12] and Dauphin filed a memorandum in further support of his motion on August 19, 2014.[13]

---

[5] *Id.* at ¶¶ 5–7.

[6] *Id.* at ¶ 16.

[7] Rec. Doc. 35.

[8] Rec. Doc. 48 at p. 3.

[9] Rec. Doc. 55-2.

[10] *Id.*

[11] Rec. Doc. 58.

[12] Rec. Doc. 60.

[13] Rec. Doc. 65.

## II. Parties' Arguments

### A.      *Dauphin's Arguments in Support*

Dauphin contends that there are five separate grounds supporting a judgment notwithstanding the verdict or, in the alternative, a new trial. First, he argues that the jury was unreasonable in finding that he was not injured in the collision because "the overwhelming, undisputed evidence clearly shows some injury leaving the issue of the extent of the neck injuries to be determined by the jury."[14] In support of this argument, he contends that Defendants' medical expert, Dr. Robert Applebaum, confirmed "[t]he fact of injury"[15] and "conceded that Miguel Dauphin sustained a sprain or strain injury to his neck."[16]

Next, Dauphin contends that the jury failed to follow the *Housley* presumption on injury causation, which, according to Dauphin:

> establishes a causal connection between an injury the plaintiff suffered in an accident, if before the accident, the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.[17]

Dauphin argues that the *Housley* presumption applies in this case because "there was strong and overwhelming evidence that the plaintiff sustained some injury to his neck in the August 1, 2012 motor vehicle collision, and there was no evidence of any prior injury to Miguel Dauphin's neck."[18]

---

[14] *Id.* at pp. 11-12.

[15] Rec. Doc. 58-1 at p. 10.

[16] *Id.* at p. 11.

[17] *Id.* at p. 12.

[18] Rec. Doc. 58 at p. 1.

Additionally, Dauphin argues that "the jury failed to follow the presumption that the plaintiff's treating physicians carry more weight than the defendants [sic] medical expert hired solely for the purposes of litigation."[19] According to Dauphin, the evidence introduced at trial "revealed three treating physicians opined [sic] that there was a neck injury with a C3-4 herniation that was effacing the spinal cord."[20]

Next, Dauphin contends that "the evidence clearly showed that the jury erred in returning a verdict that was solely based on the force of impact, which cannot be a factor alone in determining causation for injuries."[21] Specifically, he argues that the jury erroneously relied only on photographs and documents demonstrating damage to his vehicle in their determination that he was not injured in the collision.[22] According to Dauphin, degree of impact evidence is irrelevant because "it is not disputed that an injury was sustained by Miguel Dauphin."[23] Therefore, he contends, "[t]he jury was clearly wrong and unreasonable" in its determination that he did not sustain an injury in the collision.[24]

Finally, Dauphin argues that "the jury failed to follow the law as instructed on aggravation of a pre-existing condition as it was undisputed that he sustained a sprain/strain type injury to his back during the August 1, 2012 motor vehicle collision that aggravated his pre-existing low back

---

[19] *Id.*

[20] Rec. Doc. 58-1 at p. 15.

[21] Rec. Doc. 58 at p. 2.

[22] *Id.* at p. 17.

[23] *Id.* at p. 18.

[24] *Id.* at p. 20.

injury."[25]

## B.    *Defendants' Arguments in Opposition*

Defendants' main argument in opposition to the pending motion is that the jury considered

all of the evidence, assessed the credibility of Dauphin and the expert witnesses, and correctly

determined that Dauphin was not injured in the accident.[26] Specifically,

> [t]he jury found that the evidence in the record and the plaintiff's unimpressive
> appearance as a witness cast serious suspicions and doubts on the reliability and
> credibility of both the plaintiff's and his new doctor's testimony and evidence. As
> a result, the Jury rejected and negated any evidence suggesting he may have been
> injured in this accident.[27]

Defendants point to the following questions, which were submitted to the Court by the jury during

its deliberations:

> (1)    Can you clarify when Mr. Dauphin initially experienced the neck burning?
>        At the scene when the police were filling out the report, or after he got out
>        of the shower at home?
>
> (2)    When he realized his neck was "burning," why did he not go to the
>        emergency room as soon as he experienced it considering his previous
>        medical history?[28]

These questions, according to Defendants, indicate that  "[t]he Jury simply did not believe the

plaintiff or his doctors that he was injured."[29] Defendants additionally argue that, as stated in the jury

instructions, a plaintiff is not entitled to a favorable judgment just because he filed a lawsuit, and

---

[25] Rec. Doc. 58 at pp. 1–2.

[26] Rec. Doc. 60 at p. 1.

[27] *Id.* at p. 7.

[28] *Id.* at p. 2 (citing Rec. Doc. 55-1).

[29] *Id.*

moreover the jury is allowed to assess the credibility of all witnesses, including experts.[30]

With regard to Dauphin's argument that the jury returned a verdict based solely on force of impact evidence, Defendants contend that "[t]he Jury took all of the evidence into consideration."[31] Specifically, Defendants argue that:

> Plaintiff testified that no EMTs came to the accident scene, he did not require any care at the scene, and he did not go to the emergency room on the day of the accident, the next day, or for months after. The plaintiff testified that because of this accident, he was not prevented from doing his normal activities and no doctors put any additional restrictions or limitations on his activities.[32]

Moreover, according to Defendants, evidence was presented that Dauphin had been involved in at least two prior accidents, including an 18-wheeler accident and a 20 to 25 foot fall from a ship onto a barge.[33] With respect to the 18-wheeler accident, Defendants note that Dauphin testified that he was injured and received medical care and treatment, but could not remember the names of his doctors.[34] Defendants argue that although Dauphin was treated by more than ten healthcare providers after the 20 to 25 foot fall, "he never returned [t]o any of his treating physicians from that accident even though he was alleging an aggravation of his low back injury from that prior accident."[35]

Additionally, Defendants contend that Dauphin failed to disclose the previous accidents to his treating physician, Dr. George Bryant, who reported that Dauphin's "past medical history was

---

[30] *Id.* at pp. 2–3.

[31] *Id.* at p. 4.

[32] *Id.*

[33] *Id.* at pp. 4–5.

[34] *Id.* at p. 5.

[35] *Id.*

unremarkable for any previous accidents or injuries."[36] Moreover, Defendants argue that Dauphin

failed to inform his treating physicians, Dr. Karen Ortenberg, Dr. Charles April, or Dr. Bradley

Bartholomew, about the 18-wheeler accident, the injuries he sustained, or the names of the doctors

who treated him at that time.[37] Additionally, according to Defendants, Dauphin testified that his head

was turned to the side at the time of the accident, but that he never reported that to his doctors.[38]

Finally, Defendants contend that "the Jury did not believe the plaintiff, the Jury did not find the

existence of the required predicate facts, and did not find that the plaintiff established all of the

required elements for *Housley*; [sic] and as a result, the plaintiff is not entitled to any

presumption."[39]

**C.    *Dauphin's Arguments in Further Support***

Dauphin reavers that the evidence "clearly, overwhelmingly and undisputedly proved at least

some injury was sustained by the plaintiff."[40] Dauphin argues that it is an "undisputed fact that all

of the medical experts agree that at least some injury was sustained by the plaintiff in this

collision."[41] Dauphin contends further that "[t]he evidence and questions submitted by the jury

clearly show a lack of understanding of the medical evidence as well as a verdict that is based solely

on the photographs and the property damage documents."[42]

---

[36] *Id.* at pp. 5–6.

[37] *Id.* at p. 6.

[38] *Id.*

[39] *Id.* at p. 7. The Court notes that Defendants do not address the treating physicians' presumption or whether the jury failed to follow the law as instructed on aggravation of a pre-existing condition.

[40] Rec. Doc. 65 at p. 2.

[41] *Id.* at p. 1.

[42] *Id.*

Next, Dauphin contends that Defendants failed to overcome the *Housley* presumption.[43] Specifically, according to Dauphin, each physician testified that he or she "reviewed considerable amounts of medical records dating back years and failed to observe any mention of prior neck complaints."[44] Dauphin argues that "[t]he defendants [sic] contention that the 2007 fall on the ship and an accident with an 18 wheeler [sic] many years ago could have caused his neck injury is without evidentiary support."[45]

Dauphin additionally alleges that although the Court specifically instructed that the jury could not render a verdict of no injury based solely on evidence of property damage, "[t]he jury disregarded this instruction."[46] According to Dauphin, Defendants have failed to put forth any evidence that the force of impact did not cause him any injury, and that "there is [sic] no evidence submitted to this jury that a person who is in a rear-end collision with minimal property damage could not have been injured."[47] Dauphin states that "[t]he testimony of Dr. Applebaum did not establish the magnitude of the property damage to be dispositive of injury causation in this case."[48]

Finally, Dauphin argues that he testified that he developed neck pain at the accident scene, and that he told Dr. Applebaum that he noticed some burning in his neck a half hour after the accident.[49] Moreover, Dauphin contends that the evidence presented at trial indicates that he went

---

[43] *Id.*

[44] *Id.* at pp. 3–4.

[45] *Id.* at p. 4.

[46] *Id.*

[47] *Id.* at p. 5.

[48] *Id.* at p. 6.

[49] *Id.*

to a physician the day after the accident.[50] This evidence, according to Dauphin, "undisputedly" shows that he developed neck pain at the accident scene. Dauphin states that "[t]he jury was obviously pre- disposed to its bias and partiality regarding the amount of the property damage, and they were not focused on the undisputed evidence that a reasonable and impartial jury would rely upon in rendering a verdict in light of this Honorable Court's jury instruction on force of impact."[51] Finally, Dauphin argues that his prior treating physician, Dr. Ortenberg, testified that she was unable to treat him following the accident because she was too busy.[52]

### III. Law and Analysis

#### A. *Standard for a Judgment Notwithstanding the Verdict*

Dauphin first moves for judgment notwithstanding the verdict ("JNOV") on the issue of whether he sustained  injuries as a result of the motor vehicle collision. Dauphin purports to bring his motion pursuant to a Louisiana statute, La. C.C.P. art 1811, and not the Federal Rules of Civil Procedure.  Art. 1181 provides, in relevant part: "The motion for a judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both issues."[53]

The Fifth Circuit has held that a court must apply Louisiana law to JNOV and new trial motions when exercising diversity jurisdiction.[54] As the Fifth Circuit explained in *Brown v. Wal-*

---

[50] *Id.*

[51] *Id.*

[52] *Fair v. Allen*, 669 F.3d 601, 604 (5th Cir. 2012).

[53] LA C.C.P. art. 1811(F).

[54] *Brown v. Wal-Mart Louisiana, L.L.C.*, 565 Fed. Appx. 293, 295 (5th Cir. 2014) (holding that a motion for JNOV seeking, in part, an increase in the jury award was governed by the Louisiana JNOV statute and relevant jurisprudential standards); *Fair v. Allen*, 669 F.3d 601 (5th Cir. 2012) (holding that "the [magistrate judge] erred in applying the federal standard; Louisiana law applies.").

*Mart*, "[w]hen applying Louisiana law, we 'consider the record as a whole in the light most favorable to the defendant in order to determine which injuries a rational fact finder must have concluded were causally related to the accident.'"[55]  Despite permitting a trial court to review the jury's credibility determinations, Louisiana gives the jury high deference.[56] A JNOV  motion "should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover."[57]

## B.    *Standard on a Motion for a New Trial*

Under Louisiana law, "[a] new trial shall be granted . . . when the verdict or judgment appears clearly contrary to the law and the evidence."[58] "The trial court's discretion in ruling on a motion for new trial is great,"[59] and "the court can evaluate the evidence, draw it's [sic] own inferences and conclusions, and determine whether the jury 'erred in giving too much credence to

---

[55] *Brown*, 565 Fed. Appx. at 295 (quoting  *Revel v. Snow*, 664 So.2d 655, 659 (La. App. 3 Cir. 1995)).

[56] *Id.* (citing *Fair*, 669 F.3d at 605).

[57] *Id.* (citing *Joseph v. Broussard Rice Mill, Inc.*, 772 So.2d 94, 99 (La. 2000)); *see also  Trunk v. Medical Center of Louisiana*, 885 So.2d 534, 537 (La. 2004) ("A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes reasonable persons could not arrive at a contrary verdict.") (quoting Joseph, 772 So.2d at 99); *Lawson v. Mitsubishi Motor Sales of Am., Inc.*, 938 So.2d 35, 52 (La. 2006) ("[T]he court should not evaluate the credibility of the witnesses and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.").

The Court notes that the federal standard is similar, and that the Fifth Circuit has instructed that courts should grant judgment as a matter of law only if "the facts and inferences point so strongly and overwhelmingly in favor of one party that the court concludes that reasonable jurors could not arrive at a contrary verdict." *See  Bellows v. Amoco Oil Co.*, 118 F.3d 268, 273 (5th Cir. 1997) (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc)).

[58] La. Code Civ. P. art. 1972(1).

[59] *Davis v. Wal-Mart Sores, Inc.*, 2000-0445 (La. 11/28/00), 774 So. 2d 84, 93.

an unreliable witness.'"[60] However, the Louisiana Supreme Court has cautioned:

> The fact that a determination on a motion for new trial involves judicial discretion, however, does not imply that the trial court can freely interfere with any verdict with which it disagrees. The discretionary power to grant a new trial must be exercised with considerable caution. Fact finding is the province of the jury, and the trial court must not overstep its duty in overseeing the administration of justice and unnecessarily usurp the jury's responsibility. A motion for new trial solely on the basis of being contrary to the evidence is directed squarely at the accuracy of the jury's factual determinations and must be viewed in that light. Thus, the jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence.[61]

Stated differently, "[t]he scales are clearly tilted in favor of the survival of the jury's verdict."[62]

## C.    *Analysis*

As stated above, Dauphin attacks the verdict on five grounds: (1) the jury was unreasonable in finding that he was not injured in the collision; (2) the jury failed to follow the *Housley* presumption on injury causation; (3) the jury failed to follow the treating physician presumption; (4) the jury relied solely on force of impact evidence; and (5) the jury failed to follow the law as instructed.[63] The Court considers each in turn.

### 1.    **Weight of the Evidence**

Dauphin argues that the evidence presented at trial was so strong that reasonable persons

---

[60] *Fair*, 669 F.3d at 605 (quoting *Joseph v. Broussard Rice Mill, Inc.*, 2000-0628 (La. 10/30/00), 772 So. 2d 94, 104)).

[61] *Davis*, 774 So. 2d at 93 (quoting *Gibson v. Bossier City Gen. Hosp.*, 594 So. 2d 1332, 1336 (La. App. 2 Cir. 1991)).

[62] *Id.* Again, the Court notes that the federal and state standards for evaluating a motion for a new trial are similar. Federal Rule of Civil Procedure 59(a) allows a court to grant a new trial if, in its discretion, it "finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." When a party moves for a new trial on evidentiary grounds, the court will not grant a new trial unless the verdict is against the great weight of the evidence and reasonable persons could not arrive at a contrary conclusion. *See Smith v. Transworld Co.*, 773 F.2d 610, 613 (5th Cir. 1985); *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998).

[63] Rec. Doc. 58 at pp. 1–2.

could only conclude that he sustained at least a sprain or strain injury to his neck as a result of the collision.[64] Specifically, he argues that "all of the medical experts agree that at least some injury was sustained by the plaintiff in this collision."[65] Defendants contend that the jury properly weighed the evidence and assessed the credibility of the witnesses, including the experts, and determined that Dauphin was not injured in the collision.[66]

It is beyond cavil that "[f]act finding is the province of the jury."[67] A jury is free to judge the credibility of all witnesses and can accept or reject any or all expert witness testimony.[68] Moreover, a jury has broad discretion in determining and awarding damages in personal injury actions.[69]  In this matter, the Court specifically instructed the jury that the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all evidence. The jury was told that:

> the credibility of all lay or expert witnesses is a matter for you to decide. If you find that any witness, including the plaintiff, has testified falsely with regard to one aspect of the case, you may reject his or her testimony in its entirety, or give it such believability as you may think it deserves.

With respect to expert witnesses, the jury was instructed that "you are not required to accept [an expert's] opinion. As with any other witness it is up to you to decide whether to rely upon it."

In this case, there was ample evidence from which the jury could have determined that

---

[64] Rec. Doc. 65 at p. 3.

[65] *Id.* at p. 1.

[66] Rec. Doc. 60 at p. 3.

[67] *Davis*, 774 So. 2d at 93 (quoting *Gibson v. Bossier City Gen. Hosp.*, 594 So. 2d 1332, 1336 (La. App. 2 Cir. 1991)).

[68] *Oyefodun v. The City of New Orleans*, 2001 WL 775574, at *2 (E.D. La. 2001) (Vance, J.), aff'd, 54 F. App'x 793 (5th Cir. 2002).

[69] *Book v. Nordrill, Inc*., 826 F.2d 1457, 1462 (5th Cir. 1987).

Dauphin was not injured in the collision. Dr. Applebaum testified that he examined Dauphin on March 25, 2014 and found no evidence of a ruptured disc or disease or damage in Dauphin's spinal cord or nerve roots in his neck.[70] He also provided an alternate explanation – age – for "the moderate bulge present at the C3-4 level in the neck."[71] Finally, he testified that Dauphin did not disclose the 18-wheeler accident or the 20-25 foot fall on the ship. A fair interpretation of this testimony could lead a jury to believe that Dauphin did not suffer injuries as a result of the collision.

Dauphin argues that Dr. Applebaum "unequivocally" conceded that he suffered an injury due to the following testimony:

> Q:    Now, medical records in evidence regarding the Healthcare Center - - the plaintiff went to go see the Healthcare Center for about four months after this accident. Okay? He went the day after the accident, and then he treated for four months and did not go back to the facility. That's in evidence. Those records are in evidence. My question is: If those records indicate that the examination of the neck did not reveal tenderness or spasm on those visits, what would that mean to you?
>
> A.    That would make it even more remote that he had any significant injury and probably would be just a sprain or strain.
>
> Q.    So if that is, in fact, the case, that would be your opinion regarding the neck?
>
> A.    Yes.[72]

However, the Court cannot find that this excerpt of Dr. Applebaum's testimony points so strongly in favor of Dauphin's version of events that reasonable persons could not reach different conclusions as to the existence of an injury. As stated above, the jury is entitled to weigh the credibility of all witnesses, including experts. That the jury apparently found Defendants' expert to be more credible

---

[70] Rec. Doc. 58-7 at pp. 11–12.

[71] *Id.*

[72] *Id.* at pp. 2–3.

13

does not, in itself, provide grounds to overturn the jury's verdict.

The jury was presented with additional evidence from which it could reasonably have determined that Dauphin was not injured in the collision. Dauphin testified that no emergency medical technicians ("EMTs") were dispatched to the accident scene and that he did not require medical care at that time. Moreover, he testified that the accident did not prevent him from participating in his normal activities, and that his physicians did not place additional restrictions or limitations on his activities. The jury also heard evidence that Dauphin was involved in at least two previous accidents involving a collision with an 18-wheeler and a 20 to 25 foot fall from a ship onto a barge. Dauphin testified that, due to the latter accident, he was treated by more than ten healthcare providers and underwent surgery on his low back. Finally, the jury saw evidence that the collision was minor, which supports an inference that Dauphin did not suffer any injuries as a result.

Reviewing all factual inferences in favor of  Defendants, the Court finds that the evidence in the record does not point so strongly in favor of Dauphin  that reasonable jurors must have arrived at a contrary verdict. As stated above, it is the province of the jury to weigh facts and assess the credibility of all witnesses. The determination of whether Dauphin was injured in the collision was a factual issue reserved for the jury, and  the Court finds no reason to disturb the jury's determination.

      **2.**    ***Housley* Presumption**

The plaintiff in a personal injury case must prove causation for his injuries by a preponderance of the evidence. The plaintiff is aided by a presumption that the injuries resulted from an accident if he establishes the following:

     (1)    the plaintiff was in good health before the accident with regard to the specific area injured;

(2)     commencing with the accident, the symptoms of the injury appear and continue to manifest themselves thereafter; and

(3)     medical evidence shows a reasonable connection between the incident and the injury.[73]

The jury in this case was instructed that "if the plaintiff establishes these elements, and the defendants do not prove that the specific injury was caused by some other incident, you are to presume that the specific injury was caused by the August 1, 2012 motor vehicle collision."

As stated above, the jury found, by a preponderance of the evidence, that Dauphin suffered no injuries as a result of the  collision. Examining the totality of the circumstances, the jury could have found that, considering his previous medical history and evidence of prior accidents, Dauphin was not in good health with respect to his neck prior to the collision. Additionally, as Defendants stated in their opposition memorandum, the jury sent two questions to the Court during its deliberations:

(1)     Can you clarify when Mr. Dauphin initially experienced the neck burning? At the scene when the police were filling out the report, or after he got out of the shower at home?

(2)     When he realized his neck was "burning," why did he not go to the emergency room as soon as he experienced it considering his previous medical history?[74]

The jury may well have found that, by a preponderance of the evidence, the symptoms of injury did not commence with the collision. Having found that Dauphin suffered no injuries, the jury was not required to apply the *Housley* presumption, which presumes a causal relationship between an injury and an event. Therefore, the Court will not overturn the jury's verdict for failure to follow the

---

[73] *Fair v. Allen*, 669 F.3d 601, 605 (5th Cir. 2012) (citing *Maranto v. Goodyear Tire & Rubber Co.*, 650 So.2d 757, 759, 761 (La.1995) (quoting *Housley v. Cerise*, 579 So.2d 973, 980 (La.1991)) (internal quotation marks omitted)).

[74] *Id.* at p. 2 (citing Rec. Doc. 55-1).

15

*Housley* presumption.

### 3.        Physician Presumption

In Louisiana, the diagnoses and opinions of a treating physician are entitled to more weight than are those of doctors who examined the plaintiff for only litigation purposes.[75] Dauphin argues that because his experts testified that he was injured and needed the treatments that he received, the jury had to accept his doctors' testimony over that of the defense expert.   However, "the presumption does not give a treating physician unlimited credibility. Instead, the presumption means only that when considering who is more credible, the fact that treating physicians as a class are more credible must be given appropriate weight."[76]

As stated above, there was ample evidence in this case from which the jury could have determined that the defense's doctor was more credible. First, the jury heard live testimony from battling experts as to the cause of the "bulge" present the C3-4 level in Dauphin's neck and the condition of his neck.  Also, the jury saw photographs of the accident, from which it could determine that the crash was minor. A fair interpretation of this evidence could lead a jury to believe that Dauphin did not suffer injuries from the collision. Accordingly, he is not entitled to JNOV or a new trial based on a failure to heed the physician presumption.

### 4.        Force of Impact

Dauphin argues that "[t]he jury clearly relied only upon the force of impact argument and relied upon it alone in making their determination that the plaintiff was not injured in the rear-end

---

[75] *Schouest v. J. Ray McDermott & Co.*, 411 So.2d 1042, 1044 (La. 1982).

[76] *Fair v. Allen*, 669 F.3d 601, 606 (5th Cir. 2012).

collision at issue."[77] It appears to be Dauphin's argument that because the Court granted his unopposed motion for summary judgment on the issue of liability,[78] the issue at trial was not whether there were damages, but rather the extent of damages presumed.[79]

Dauphin's argument is little more than speculation. The jury was instructed that "you must examine all the facts of the case and should not measure the degree of injuries by looking at the force of the collision alone." Dauphin presents no evidence and articulates no argument explaining why he believes the jury failed to heed the Court's instruction. The jury was entitled to consider the force of impact evidence presented at trial. The Court accordingly declines to grant the pending motion on these grounds.

**5.      Whether the jury failed to follow the law as instructed**

Dauphin states that "[t]the court instructed the jury that the defendant is responsible for aggravation of a pre-existing condition," and that the jury accordingly did not follow the Court's instruction when it returned its verdict.[80] However, Dauphin misstates and apparently misunderstands the jury instructions on this issue. The Court instructed the jury as follows:

> You *may* award damages for aggravation of the existing disease or physical defect resulting from physical injury to the plaintiff. *If you find that there was such an aggravation*, you should determine, if you can, what portion of the plaintiff's condition resulted from the aggravation, and make allowance in your verdict only for the aggravation.[81]

The Court did not instruct the jury that Dauphin was injured, or that Defendants were responsible

---

[77] Rec. Doc. 58-1 at p. 18.

[78] Rec. Doc. 35.

[79] *Id.*

[80] *Id.* at p. 19.

[81] Rec. Doc. 58-11 (emphasis added).

for aggravation of a pre-existing condition. Instead, the Court instructed the jury that they should award damages for aggravation only if they first determined that Dauphin suffered aggravation of an existing injury. The jury found that Dauphin did not suffer an injury from the collision, and accordingly had no reason to find Defendants responsible for aggravation of a pre-existing condition. Presented with no evidence to the contrary, the Court finds that the jury followed the law as instructed in this matter.

As stated above, a JNOV motion "should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover."[82] With respect to a motion for a new trial, "the jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence."[83] Having concluded that the jury's verdict is neither contrary to the evidence nor the law, and the Court will deny Dauphin's motion.

## V. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Dauphin's "Motion for Judgment Notwithstanding the Verdict or Motion for a New Trial"[84] **DENIED.**

**NEW ORLEANS, LOUISIANA**, this __3rd__ day of March, 2015.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[82] *Brown*, 565 Fed. Appx. at 295.

[83] *Davis*, 774 So. 2d at 93 (quoting *Gibson v. Bossier City Gen. Hosp.*, 594 So. 2d 1332 (La. App. 2 Cir. 1991)).

[84] Rec. Doc. 58.

18